IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                        No. 2:11-cv-01136 JAM KJN

        v.

NORLIN MERRITT and MARIA MERRITT,

        Defendants.              FINDINGS AND RECOMMENDATIONS
_____/

        Presently before the court is plaintiff's motion for default judgment, which seeks declaratory and injunctive relief in regards to an allegedly false lien filed by defendants with the Secretary of State for the State of California and against Internal Revenue Service Revenue Officer Nancy Wong.[1] (Mot. for Default J., Dkt. No. 8.) The court heard plaintiff's motion for default judgment on its law and motion calendar on October 20, 2011. Kaycee M. Sullivan appeared at the hearing via telephone on behalf of plaintiff. No appearance was made by or on behalf of either defendant. For the reasons stated below, the undersigned recommends that plaintiff's motion for default judgment be granted, that judgment be entered in plaintiff's favor, and that plaintiff be awarded the requested declaratory and injunctive relief.

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

I. BACKGROUND

Plaintiff alleges that at all relevant times Nancy Wong was a Revenue Officer with the Internal Revenue Service ("IRS") and was involved in the collection of unpaid federal tax liability from defendants, who are husband and wife. (Compl. ¶ 6; Wong Decl. ¶¶ 1-2, Dkt. No. 8, Doc. No. 8-2.) In connection with the IRS's collection activities, Revenue Officer Wong "issued levies on Norlin Merritt's bank accounts and accounts receivable, requested [that] notices of federal tax liens be filed against him and issued summonses to third parties to investigate his assets." (Wong Decl. ¶ 3.) On October 8, 2009, Revenue Officer Wong received from Mr. Merritt "privately issued 'money orders' to cover the tax lien amounts," but these "money orders appeared to be fictitious instruments" and thus were not processed. (Id. ¶ 4.)

On October 31, 2009, Maria Merritt, who "is authorized to act as Norlin Merritt's power of attorney with the IRS," filed a UCC Financing Statement with the California Secretary of State against Revenue Officer Wong in a total amount of $202,518.55. (Compl. ¶¶ 5, 7-8 & Ex. 1 (UCC Financing Statement, Filing No. 09-7212900898); Wong Decl. ¶¶ 2, 5.) Norlin Merritt is listed as the secured party on the UCC Financing Statement. (Compl. ¶ 5 & Ex. 1.)

Plaintiff alleges that Ms. Merritt filed the UCC Financing Statement in retaliation for acts performed by Revenue Officer Wong as part of Revenue Officer Wong's official duties on behalf of the IRS, and that the filing of the UCC Financing Statement was "specifically designed to cause substantial interference with the enforcement of the laws of the United States pertaining to the internal revenue and to molest, interrupt, hinder, intimidate or impede Revenue Officer Wong in the good faith performance of her official duties." (See Compl. ¶¶ 7-9; Wong Decl. ¶ 5.) Revenue Officer Wong further declares:

> I am not personally acquainted with Maria Merritt and have not had any contact or relationship with her other than in my official capacity as a Revenue Officer. I have not engaged in any contract, security agreements, or personal transaction with Maria Merritt and do not owe money to her. There is no legitimate reason for Maria Merritt to impose such a lien on my personal property.

1  (Wong Decl. ¶ 6.)

2  Plaintiff filed its complaint on April 28, 2011 (Dkt. No. 1). Plaintiff's complaint
3  seeks declaratory and injunctive relief. Specifically, plaintiff requests that the court:
4  (1) "determine, adjudge, and declare the UCC Financing Statement . . . to be null, void, and of no
5  legal effect"; (2) "expunge and remove any record of the UCC Financing Statement . . . from the
6  official records of the Secretary of State for the State of California"; (3) "grant [plaintiff] leave to
7  file any Order or Judgment obtained in the present case with the Secretary of State for the State
8  of California, and in the public records of any other jurisdiction where documents identical or
9  similar to the UCC Financing Statement . . . may have been filed by the defendant"; and
10 (4) "permanently enjoin defendant Norlin Merritt, his agents, employees, and all others in active
11 concert or participation with the defendants from filing, or attempting to file, any document or
12 instrument which purports to create any nonconsensual lien or encumbrance against the person or
13 property of any employee of the United States." (Compl. at 3.)

14 One of the proofs of service filed by plaintiff reflects that on May 14, 2011,
15 plaintiff, through a process server, effectuated personal service of process on Maria Merritt. (See
16 Proof of Service, Dkt. No. 4.) Another proof of service filed by plaintiff reflects that plaintiff's
17 process server attempted to effectuate personal service on Norlin Merritt on five separate
18 occasions in May 2011, and ultimately effectuated substituted service on May 14, 2011, by
19 leaving the summons, complaint, and related documents with Maria Merritt. (See Proof of
20 Service, Dkt. No. 5.) Plaintiff's process server also mailed a copy of the summons, complaint,
21 and other documents to Norlin Merritt at the following address: 540 Stone Drive, Novato,
22 California 94947-7502. (Id.)

23 On August 19, 2011, plaintiff requested that the Clerk of Court enter default
24 against defendants. (Req. for Entry of Default, Dkt. No. 6.) That same day, the Clerk of Court
25 entered the default of both defendants. (Clerks Cert. of Entry of Default, Dkt. No. 7.) In entering
26 default, the Clerk of Court stated that it appeared from the record and papers on file in the action

that defendants were duly served with process, but failed to appear, plead, or answer plaintiff's complaint within the time allowed by law. (See id.)

On August 23, 2011, plaintiff filed a motion for default judgment against defendants and served a copy of the motion on defendants by U.S. mail. (Cert. of Serv., Aug. 23, 2011, Dkt. No. 8, Doc. No. 8-2.) A review of the court's docket reveals that defendants have not appeared in this action or filed a response to the motion for default judgment.

The undersigned notes that this is not the first case involving a false lien filed by Maria Merritt against Revenue Officer Wong. Plaintiff requests that the court take judicial notice of another action filed in this court, United States v. Merritt, 2:10-cv-00618 MCE KJN ("Merritt I"), and the undersigned grants plaintiff's request.[2] At issue in Merritt I was another UCC Financing Statement that Maria Merritt filed with the California Secretary of State on October 29, 2009, in regards to Revenue Officer Wong. Plaintiff was successful in Merritt I, and the "Order of Expungement and Permanent Injunction" is attached to the complaint in this action. (Compl. at 3 & Ex. 2.)

II.  LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this

---

[2] The court may take judicial notice of court records and other matters of public record. See, e.g., Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Shaw v. Hahn, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. Geddes, 559 F.2d at 560.

III. DISCUSSION

    A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

        1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of

5

granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, Revenue Officer Wong would face continuing prejudice if the court does not grant a default judgment.  She declares that the false lien has caused her "distress and anxiety" and concern regarding the negative impact of this lien on her personal credit.  (See Wong Decl. ¶ 7.)  Additionally, the United States would be further hindered in its attempts to collect on Norlin Merritt's outstanding federal tax liability.  Absent the granting of a default judgment, plaintiff and Revenue Officer Wong would be without a sufficient recourse, at least through a civil proceeding, to stop defendants' pursuit of false liens and hindrance of the IRS's collection efforts by defendants.  Accordingly, the first Eitel factor favors the entry of a default judgment.

         2.        Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries.  The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

Although plaintiff's complaint does not clearly state the express statutory basis for the relief sought, it readily appears that the basis for seeking to void the false lien is 26 U.S.C. § 7402.  (See Compl. ¶ 2 (asserting that this court has jurisdiction over plaintiff's action pursuant to 28 U.S.C. § 1345 and 26 U.S.C. § 7402).  Pursuant to 26 U.S.C. § 7402(a), "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction . . . , and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."  The Ninth Circuit Court of Appeals has held that "section 7402(a) empowers the district court to void common-law liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes."  Ryan v. Bilby, 764

F.2d 1325, 1327 (9th Cir. 1985); accord Cook v. Peter Kiewit Sons Co., 775 F.2d 1030, 1035 (9th Cir. 1985).  Judges of this court have frequently granted relief in regards to false liens, including the false lien filed by Maria Merritt that was at issue in Merritt I.  See, e.g., United States v. Morris, No. 2:10-CV-00614-FCD-KJM PS, 2010 WL 5136180 (E.D. Cal. Dec. 10, 2010) (unpublished) (recommending the grant of summary judgment and the provision of declaratory and injunctive relief against a defendant who filed a false UCC Financing Statement against an IRS Revenue Officer), adopted by, 2011 WL 43579 (E.D. Cal. Jan. 6, 2011); United States v. Tarantino, No. CIV S-06-0618 GEB EFB, 2007 WL 1521031 (E.D. Cal. May 24, 2007) (unpublished) (recommending entry of a default judgment providing declaratory and injunctive relief against a defendant who filed a false UCC Financing Statement against the IRS Commissioner and various IRS employees), adopted by 2007 WL 2062930 (E.D. Cal. July 16, 2007); United States v. Perkins, No. 2:06-CV-00249-LKK-DAD, 2007 WL 164407 (E.D. Cal. Jan. 18, 2007) (unpublished) (same), adopted by 2007 WL 586896 (E.D. Cal. Feb. 23, 2007).

Under California law, a lien is created by a contract between the parties or by operation of law.  Cal. Civ. Code § 2881.  A UCC Financing Statement may be filed, for example, to perfect a security interest created by a security agreement.  See, e.g., Cassel v. Kolb, 72 Cal. App. 4th 568, 573, 84 Cal. Rptr. 2d 878, 880 (Ct. App. 1999).

Here, the well-pleaded allegations of the complaint and the declaration of Revenue Officer Wong demonstrate that defendants' purported lien against Revenue Officer Wong has no basis in law or fact.  Revenue Officer Wong is not personally acquainted with Maria Merritt and has not had any contact or relationship with Maria Merritt other than in her official capacity as a Revenue Officer.  (Wong Decl. ¶ 6.)  Critically, Revenue Officer Wong has not entered into "any contract, security agreements, or personal transaction with Maria Merritt and [does] not owe money to her."  (Id.)  Thus, the UCC Financing Statement claiming a debt of over $200,000 is not premised on any legitimate debt or law.  Rather, as alleged by plaintiff, Maria Merritt filed the UCC Financing Statement to harass Revenue Officer Wong in retaliation

7

for Revenue Officer Wong's attempts perform her official duties and collect Norlin Merritt's outstanding federal tax liability. (Compl. ¶¶ 7-9.) Accordingly, plaintiff has pled a sufficient basis for relief sought pursuant to 26 U.S.C. §7402(a).

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff does not seek monetary damages at all. Instead, plaintiff seeks declaratory relief and injunctive relief designed to expunge the UCC Financing Statement at issue and preclude defendants from continuing their practice of harassing Revenue Officer Wong. Accordingly, this factor favors granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1176-77.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claim and a declaration of Revenue Officer Wong in support of the allegations in the complaint. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.[3] See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

Upon review of the record before the court, the undersigned finds that the default

---

[3] Defendants' failure to file an answer in this case further supports the conclusion that the possibility of a dispute as to material facts is minimal.

8

was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Defendants have had ample notice of this lawsuit. Plaintiff properly served each defendant with process, and also served both defendants by mail with the motion for default judgment. Despite such ample notice of this lawsuit and plaintiff's intention to move for a default judgment, defendants have not appeared in this action and have done nothing to defend themselves. Thus, the record suggests that defendants have chosen not to defend themselves in this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); ACS Recovery Servs., Inc. v. Kaplan, No. C 09-01304, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc., No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished). Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to a default judgment against defendants and recommends that a such a default judgment be entered. All that remains is the determination of the relief to which plaintiff is entitled.

### B. Terms of the Judgment to Be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the

record in this case, the undersigned concludes that plaintiff is entitled to the declaratory relief and injunctive relief sought.

Plaintiff seeks both declaratory relief and injunctive relief pursuant to 26 U.S.C. § 7402(a). In regards to the declaratory relief sought, plaintiff has plainly substantiated that it is entitled to a declaration that the UCC Financing Statement, Filing Number 09-7212900898, is null and void. That non-consensual lien has no basis in law or fact and is thus without legal effect. Accordingly, the undersigned recommends that such declaratory relief be granted.

The undersigned concludes that plaintiff is also entitled to the injunctive relief sought pursuant to 26 U.S.C. § 7402(a). Section 7402(a) authorizes the issuance of injunctive relief "as may be necessary or appropriate for the enforcement of the internal revenue laws." Id. It is unclear whether plaintiff need only satisfy 26 U.S.C. § 7402(a) to obtain injunctive relief, or whether plaintiff must satisfy the traditional equitable requirements for the issuance of a permanent injunction. See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 325-26 (1999) (distinguishing a statutory authorization for the issuance of tax injunctions from a federal court's equity powers); United States v. Estate Pres. Servs., 202 F.3d 1093, 1098 (9th Cir. 2000) (noting that in regards to injunctive relief sought pursuant to 26 U.S.C. § 7408, "[t]he traditional requirements for equitable relief need not be satisfied since Section 7408 expressly authorizes the issuance of an injunction"); United States v. Schiff, 379 F.3d 621, 624 (9th Cir. 2004) ("Courts use a specialized standard when reviewing preliminary injunctions issued pursuant to 26 U.S.C. § 7408."); see also United States v. Thompson, 395 F. Supp. 2d 941, 945 (E.D. Cal. 2005) ("Because § 7402(a) grants the court injunctive power, the government need only show that an injunction is appropriate for the enforcement of the internal revenue laws, without reference to the traditional equitable factors."); accord United States v. LCL Adm'rs, Inc., No. CIV. S-10-2644 LKK/DAD, 2011 WL 1047721, at *2 (E.D. Cal. Mar. 18, 2011) (unpublished) (analyzing requests for injunctive relief pursuant to 26 U.S.C. § 7402(a) under the statutory standard); but see United States v. Cohen, 222 F.R.D. 652, 653-54 (W.D.

Wash. 2004) (requiring analysis of a request for injunctive relief pursuant to 26 U.S.C. § 7402(a) under traditional equity factors). To the extent that plaintiff need only meet the statutory requirement of 26 U.S.C. § 7402(a) that the injunctive relief sought be "necessary or appropriate for the enforcement of the internal revenue laws," plaintiff has made a sufficient showing. Plaintiff has demonstrated that defendants' conduct in this case has unlawfully impeded plaintiff's ability to enforce the internal revenue laws, and has also demonstrated defendants' propensity to file false liens in order to regularly obstruct the IRS's enforcement or collection activities. However, because neither the Supreme Court nor the Ninth Circuit Court of Appeals has provided express guidance regarding the standard applied to requests for injunctive relief pursuant to Section 7402(a), the undersigned also analyzes plaintiff's request for injunctive relief under the equitable factors traditionally applied to a request for a permanent injunction. See, e.g., United States v. China China Inc., No. C 11-2065 SC, 2011 WL 4404941, at *4-7 (N.D. Cal. Aug. 31, 2011) (unpublished) (noting lack of clarity regarding proper standard and analyzing motion for default judgment seeking injunctive relief under the standard set forth in 26 U.S.C. § 7402(a) and under traditional equitable principles), adopted by, 2011 WL 4404154 (N.D. Cal. Sept. 21, 2011).

"'The requirements for the issuance of a permanent injunction are (1) the likelihood of substantial and immediate irreparable injury, and (2) the inadequacy of remedies at law.'" Montana v. BNSF Ry. Co., 623 F.3d 1312, 1317 n.3 (9th Cir. 2010) (quoting G.C. and K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1107 (9th Cir. 2003)). Additionally, "[a]ctual success on the merits of a claim is required for a permanent injunction." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 881 (9th Cir. 1999); see also Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."). The court must also consider the balance of equities and the public interest. See Winter v. Natural Resources Def. Council, Inc., 555 U.S. 7,

32 (2008) ("The factors examined above—the balance of equities and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent.").

      Here, plaintiff has demonstrated actual success on the merits. As explained above, plaintiff is entitled to a default judgment on its claim brought pursuant to 26 U.S.C. § 7402(a). Consideration of a motion for default judgment includes an evaluation of the sufficiency of plaintiff's claim and the facts supporting it. Of course, such success is fully contingent on the adoption of these findings and recommendations by the district judge assigned to this case. However, for the purpose of considering whether to recommend that a permanent injunction be issued, the undersigned concludes that plaintiff has demonstrated actual success on the merits.

      Plaintiff has also shown a likelihood of substantial and immediate irreparable injury absent an injunction. The filing of the UCC Financing Statement by Maria Merritt has encumbered Revenue Officer Wong's property and has caused her distress, anxiety, and concern regarding the negative impact of the lien on her personal credit. Moreover, defendants' act of retaliatory harassment was designed to discourage Revenue Officer Wong from performing her job and has impeded plaintiff's ability to enforce the internal revenue laws. Given that the record reflects that defendants have filed at least two retaliatory UCC Financing Statements against Revenue Officer Wong, it is highly likely that defendants will continue to harass Revenue Office Wong in the future. Such retaliatory harassment also necessarily impedes plaintiff's tax collection efforts.

      Plaintiff also lacks an adequate remedy at law. Aside from the injunction sought, plaintiff lacks a civil remedy that would stop defendants from continuing their pattern of harassing Revenue Officer Wong—and potentially additional IRS employees—by filing legally and factually baseless liens. Accordingly, this factor favors issuance of a permanent injunction.

      In considering the balance of equities, the balance greatly tips in favor of plaintiff.

The harm to plaintiff has been stated above.  And defendants would suffer no hardship or harm if the court enjoined them from filing frivolous and legally baseless liens similar to the ones underlying this action and <u>Merritt I</u>, which defendants were not entitled to file in the first place.

Finally, it is strongly in the public's interest that defendants be enjoined from continuing to harass IRS employees in retaliation for those employees' tax collection efforts.  The public plainly has an interest in the fair and efficient administration of the internal revenue laws.  The public also has an interest in preventing the federal government from having to spend substantial taxpayer money in an effort to undo the ill effects of defendants' harassing behavior.  In contrast, the public would obtain no benefit from permitting defendants to continue their misconduct.

At bottom, whether evaluated under the statutory standard set forth in 26 U.S.C. § 7402(a) or under traditional equitable standards, plaintiff is entitled to the permanent injunction sought.  The undersigned recommends that such an injunction be entered.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.    Plaintiff's motion for default judgment (Dkt. No. 8) be granted, and that judgment be entered in plaintiff's favor and against the defendants Norlin and Maria Merritt.

2.    That UCC Financing Statement, Filing Number 09-7212900898, be declared null and void, and that the UCC Financing Statement be expunged, along with any record of it, from the official records of the Secretary of State for the State of California.

3.    Defendants Norlin Merritt and Maria Merritt, their agents, employees, and all others in active concert or participation with the defendants, be permanently enjoined from filing, or attempting to file, any document or instrument which purports to create any non-consensual lien or encumbrance against the person or property of any employee of the United States.

4.    Plaintiff be granted leave to submit a proposed order of expungement and

permanent injunction suitable for filing with the Secretary of State for the State of California, and in the public records of any other jurisdiction where documents identical or similar to the UCC Financing Statement particularly described above, may have been filed by defendants.

        5. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

        IT IS SO RECOMMENDED.

DATED: October 20, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE